IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DOROTHY G. BLUITT**                                                                            **PLAINTIFF**

**V.**                                            **NO. 1:17-CV-218-DMB-DAS**

**WAL-MART STORES EAST, LP**                                               **DEFENDANT**

## OPINION AND ORDER

Before the Court is Wal-Mart Stores East, LP's motion for summary judgment. Doc. #50.

### I
### Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (quotation marks omitted). In evaluating summary judgment issues, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the

pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Factual Background and Procedural History

In 1988, Dorothy Bluitt began work as a cashier at the Wal-Mart store in Columbus, Mississippi. Doc. #57-1 at 44–45. After working there for three years, Bluitt left Wal-Mart for a higher paying job at Fred's Discount. *Id.* at 45. Bluitt stayed with Fred's for approximately four years and then returned to Wal-Mart in 1995 as a sales associate in the shoe department. *Id.* at 47, 65. One year later, she transferred to a "people greeter" position. *Id.* at 69. Bluitt suffered work injuries in 2001, 2002, and 2007, but was able to continue working. *Id.* at 85–91.

In 2014, Bluitt was promoted to the position of department manager for cosmetics. *Id.* at 77. One year later, she transferred to the position of CAP Team Associate. *Id.* at 81. As a CAP Team Associate, Bluitt's job duties included unloading trucks, stocking shelves, and zoning. *Id.* at 81–82; Doc. #50-2 at ¶ 11.[1]

### A. January 2016 Injury and Subsequent Reassignments

While working on January 16, 2016, Bluitt fell from a ladder and injured her knee. Doc. #50-1 at 95–96. Soon after, Bluitt presented to a physician and had x-rays taken of her knee. *Id.*

---

[1] In support of its summary judgment motion, Wal-Mart submitted an unsigned affidavit purportedly from Julia Faulkner, a human resources manager with Wal-Mart. *See* Doc. #50-2. In the absence of an objection to the document, the Court has considered the document in deciding the motion. *See McCloud R.R. Co. v. Sabine River Forest Prods., Inc.*, 735 F.2d 879, 882 (5th Cir. 1984) ("Sabine's implicit argument that the unsworn affidavit filed in support of the motion renders the motion deficient is also waived [sic] for failure to make a timely objection in the district court.").

2

at 104. Nine days after the injury, Bluitt saw Russell Linton, M.D., for treatment. Doc. #57-12. Linton diagnosed Bluitt with an MCL sprain and declared her unable to work pending the results of an MRI. *Id*. at 2.

On February 3, 2016, Linton cleared Bluitt to return to work with a "[m]ust be seated" restriction. Doc. #57-13 at 3. That day, Bluitt returned to work on temporary assignment as a door greeter. Doc. #50-1 at 105; Doc. #57-10. In this role, Bluitt's primary duties were to check receipts and answer customer questions. Doc. #57-16 at 10.

In "late spring/early summer of 2016," Wal-Mart commenced a company-wide initiative which replaced the people greeter position with the position of customer host. Doc. #50-2 at ¶ 13. As a part of this process, Wal-Mart eliminated the people greeter position at its Columbus store. *Id*. The essential functions of the customer host position required that candidates be able to "[m]ove, lift[], carr[y], and place[] merchandise and supplies weighing up to 25 pounds without assistance." Doc. #50-1 at Ex. 39.

On or about September 16, 2017, Bluitt was placed in a Temporary Alternative Duty[2] position on the night shift in a "night door" position. Doc. #50-3 at 9. This position—which was functionally loss prevention but was coded as "maintenance" for administrative purposes—required Bluitt to watch the door and "go around the store and pick up returns." *Id*. at 9–10; Doc. #50-4 at 15. Bluitt shared these duties with Lisa Moore, another employee with physical limitations. Doc. #50-4 at 15. During this time, Bluitt felt that Pam Wilson, the co-manager and night shift supervisor, treated her unfairly by making her walk around the store, even when Moore, who Bluitt believed had no walking restrictions, was available to do so. Doc. #50-1 at 152.

---

[2] Temporary Alternative Duties are assignments to employees "under medical restrictions which temporarily prevent them from performing one or more essential functions of their jobs." Doc. #50-2 at ¶ 9. Such duties are unavailable to employees with permanent disabilities. *Id*.

3

## B. Leave and Termination

On September 22, 2016, Bluitt underwent a Physical Work Performance Evaluation at the Columbus Orthopaedic Clinic. Doc. #50-1 at PageID #381.[3] The evaluation determined Bluitt suffered from numerous physical restrictions, including an inability to squat, crouch, climb stairs, and climb ladders. *Id.* at PageID #384. The test also determined Bluitt was limited in her ability to push, lift, pull, and walk. *Id.*

Following the September 22 evaluation, Bluitt submitted a complaint regarding her duties to Wal-Mart's "Open Door" hotline. Doc. #50-1 at 151. In response to the complaint, Wal-Mart reviewed Bluitt's evaluation and, after learning that the restrictions were permanent, instructed Bluitt to seek an accommodation through Wal-Mart's Accommodation Service Center. Doc. #50-2 at ¶¶ 7, 10. Bluitt commenced the accommodation request process on December 27, 2016. Doc. #50-2 at Ex. 1. Bluitt's application described her primary job duty as "maintenance (door person at night)." Doc. #50-1 at Ex. 36.

Bluitt's accommodation request was handled by Sedgwick Claims Management Services, Wal-Mart's third-party leave administrator. *See* Doc. #50-2 at 14–19. A Sedgwick representative spoke with Bluitt (who explained she was working as a greeter, not a maintenance work) and store personnel and ultimately concluded that the only suitable position for her restrictions was a people greeter assignment.[4] *Id.* After being advised the store eliminated the people greeter position, Sedgwick,[5] on January 10, 2017, sent a letter to Bluitt stating there were no reasonable accommodations available which would allow her to perform the position of maintenance

---

[3] Wal-Mart relies on numerous exhibits attached to Bluitt's deposition. Many of these exhibits are compilations of multiple documents. In the case of such compilations, the Court cites to the specific "PageID" assigned by the Court's electronic filing system.

[4] The notes from Sedgwick's inquiry reflect it was aware that, although Bluitt was coded as a maintenance associate, she was "work[ing] the overnight People Greeter position …." Doc. #50-2 at 15.

[5] *See* Doc. #50-2 at 20.

associate. Doc. #50-1 at Ex. 37. The letter also stated Sedgwick would conduct a vacancy search for the Columbus store and, "[i]f a suitable position is currently available, you will be offered the position. However, if there is no suitable position immediately vacant, you will be placed on personal leave [for 12 weeks] while we continue the job search." *Id*. It further stated Bluitt may "apply for promotional transfer opportunities or positions in other facilities," provided instructions for searching for vacancies, and offered assistance in applying for other stores. *Id*. Sometime later, Bluitt spoke with a Sedgwick representative and repeated that she had been working as a door greeter, not a maintenance worker.[6] Doc. #50-1 at 180. The representative informed Bluitt that she would be placed on reassignment leave until a suitable position could be located. *Id*.

On January 20, 2017, Sedgwick sent Bluitt a letter stating it had received her request for a leave of absence to run through April 4, 2017 (despite Bluitt having made no such request) and that a decision on the request would be made soon. Doc. #57-20. Charlie Caldwell, the store manager, approved the leave on January 25, 2017. Doc. #57-19.

On April 5, 2017, Caldwell and Marie Costilow, an HR representative, sent Bluitt a letter stating that her approved leave expired on April 4, 2017, and that she should contact them "to make plans for your return to work or to discuss other options that might be available to you." Doc. #57-22. Within one day, Bluitt contacted Caldwell and Costilow, who asked Bluitt whether the restrictions were permanent. Doc. #50-1 at 204. When Bluitt stated the restrictions were permanent, Caldwell stated Bluitt would likely need to take more leave. *Id*. Bluitt elected not to apply for an extension of leave. *Id*. at 200–01. Bluitt was terminated on July 30, 2018. Doc. #50-2 at ¶ 10.

---

[6] Bluitt spoke with Wilson about the mis-coding, and Wilson responded that she would speak with store manager Charlie Cardwell. Doc. #57-6 at 66–67. It is unclear whether Wilson ever did so.

### C. EEOC Charge and This Action

On March 1, 2017, while still on leave, Bluitt filed a charge of discrimination with the Equal Employment Opportunity Commission. Doc. #50-1 at Page ID #395. Bluitt alleged in the charge that Wal-Mart failed to reasonably accommodate her disability and engaged in age and disability discrimination. *Id*. She received her notice of right to sue on October 2, 2017. *Id*. at Page ID #396. On December 26, 2017, Bluitt filed a complaint in the United States District Court for the Northern District of Mississippi asserting a claim against Wal-Mart for failure to accommodate. Doc. #1. Following a period of discovery, Wal-Mart moved for summary judgment. Doc. #50. The motion is fully briefed.

### III
### Analysis

The only question before the Court is whether a genuine issue of material fact exists as to whether Wal-Mart failed to reasonably accommodate Bluitt's disability.[7]

The Americans with Disabilities Act ("ADA") "requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (alterations omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure to

---

[7] While Bluitt's EEOC charge asserted claims of age discrimination, disability discrimination, and failure to accommodate, her complaint asserts only a failure to accommodate claim. *See* Doc. #1. Out of an apparent abundance of caution, Wal-Mart moved for summary judgment on the failure to accommodate and disability discrimination claims. *See* Doc. #51 at 9. Bluitt's response to the motion for summary judgment does not address Wal-Mart's arguments regarding the disability discrimination claim. Accordingly, such a claim, to the extent asserted, is deemed waived. *See City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof.").

Bluitt's response, however, does include a citation to the American with Disabilities Act's disparate impact provision and a general statement of law that "the ADA mandates liability where there are 'methods of administration' that have the effect of discriminating on the basis of disability." Doc. #58 at 12 (citing 42 U.S.C. § 12112(b)(3)(A)). It is unclear whether this single conclusory sentence was intended to be an argument for liability. To the extent it was, it must fail because no disparate impact claim was asserted in Bluitt's complaint and because Bluitt has stated no grounds for allowing such a claim to proceed at this stage of litigation. *See Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996) (when response to motion for summary judgment asserts new claim, district court should construe response as motion to amend complaint).

accommodate claim, a plaintiff must show "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quotation marks omitted). "A 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 678 (5th Cir. 2013) (quoting 42 U.S.C. § 12111(8)).

Wal-Mart argues Bluitt's claim must fail because she was not a qualified individual and because she cannot show she was not reasonably accommodated. Doc. #51 at 10. In response, Bluitt contends (1) she was qualified for the position of people greeter, and it would have been a reasonable accommodation to keep the job in effect or to allow her to transfer to a store with such a position; (2) she was qualified to work in the fitting rooms, and it would have been reasonable to allow her to do so; and (3) she was qualified for the overnight door position because it would have been reasonable to have another employee perform the necessary physical work. Doc. #58 at 13–17. Bluitt also argues that Wal-Mart is liable because it failed to engage in the ADA's required interactive process. *Id.* at 20–21.

### A. People Greeter

Bluitt argues that "a jury may find the essential duties of [her] former job [of people greeter] were to greet customers and to examine receipts, and it would be a reasonable accommodation to keep that job in effect ...."[8] Doc. #58 at 14. Wal-Mart does not dispute Bluitt was qualified for

---

[8] In her brief, Bluitt seems to conflate the ADA's reasonable accommodation requirement with the statute's exemption that an employer need not provide a reasonable accommodation if it would impose an undue hardship. *See* Doc. #58 at 18 ("Defendant is asking this Court to pronounce, as a matter of law, that allowing Bluitt to remain in the people greeter position was not a "reasonable accommodation" or, in other words, would have been an undue hardship.").

7

the people greeter position or that a transfer represents a potentially reasonable accommodation but contends that "[r]eassignment to a nonexistent position is not a reasonable accommodation" and that Bluitt "failed to take advantage" of a transfer opportunity. Doc. #61 at 3, 15.

Bluitt has not cited a case, and this Court is aware of none, which stands for the proposition that "keep[ing a] job in effect" during a corporate restructuring is a reasonable accommodation. However, the argument is, in substance, a contention that Wal-Mart should have created a position which had been eliminated as a part of its restructuring.[9] Because the creation of a new position is *not* a reasonable accommodation, this argument fails. *See Wade v. Brennan*, 647 F. App'x 412, 417 (5th Cir. 2016) (citing *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995)); *see also Shepard v. Shinseki*, 654 F. App'x 894, 895 (9th Cir. 2016) (in Rehabilitation Act case, where employee was transferred following elimination of position, employer "was not required to recreate [the employee's] old job to accommodate his disability").[10]

As to the alleged failure to transfer to a different store, while "reassignment to a different job may be a reasonable accommodation, … the plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017). Bluitt has offered no evidence showing the existence of a people greeter vacancy (a position which Wal-

---

These are "analytically distinct" inquiries. *Hernandez v. Aldine Indep. Sch. Dist.*, 192 F.3d 125, No. 98-21016, 1999 WL 683805, at *3 n.3 (5th Cir. Aug. 4, 1999) (table decision). Thus, a court need not make a finding of undue hardship to find a requested accommodation unreasonable. *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1100 n.2 (9th Cir. 2018) ("The [ADA] is clear … that the employer's affirmative defense of 'undue hardship' is a concept separate and distinct from the question of whether an otherwise reasonable accommodation exists.").

[9] Bluitt argues "[t]here is an issue of material fact as to whether [Wal-Mart eliminated the people greeter position] since Lisa Moore was still working as a night door greeter when Plaintiff was put on leave." Doc. #58 at 9. However, Lisa Moore was not working as a people greeter, she was, as explained above, working in the same overnight door position as Bluitt, which involved duties beyond the people greeter role.

[10] The Rehabilitation Act "and the ADA are judged under the same legal standards …." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

Mart was indisputably phasing out) during the relevant time period. In the absence of such evidence, the Court cannot conclude the transfer to a different store was a reasonable accommodation.

### B. Fitting Rooms

Wal-Mart contends, and Bluitt does not dispute, that Bluitt's medical restrictions prevented her from performing the listed essential duties of a fitting room associate.[11] Thus, there is no dispute Bluitt was not qualified for such a position. However, Bluitt argues Wal-Mart should have allowed her to perform limited duties in the fitting room, as it did for Jessica Walker, another associate with physical restrictions. *See* Doc. #58 at 10, 14. Wal-Mart replies that Walker was on a temporary assignment due to non-permanent restrictions and that such a position was not available on a permanent basis. Doc. #51 at 12.

The ADA does not "require an employer to transfer [a] disabled employee to a temporary position on a more permanent basis." *Atwell v. Indianapolis-Marion Cty. Forensic Servs. Agency*, 168 F. Supp. 3d 1125, 1141 (S.D. Ind. 2016); *see Toronka v. Cont'l Airlines, Inc.*, 411 F. App'x 719, 725 (5th Cir. 2011) ("That Continental … has allowed employees to do nothing but logbook for a few months until they recovered from an injury does not mean that Continental should be forced to create a permanent logbook position …. That is not reasonable."). Accordingly, to the extent Bluitt argues Wal-Mart failed to reasonably accommodate her because it failed to place her in a temporary limited fitting room position, her argument fails.[12]

---

[11] Bluitt testified that the fitting room associate physical requirements were contrary to her physical restrictions. *See* Doc.# 50-1 at 191–92. However, none of the listed physical requirements for the position, *see* Doc. #50-1 at Ex. 40, directly conflict with Bluitt's listed restrictions, *see* Doc. #50-1 at Ex. 36. Even if Bluitt was qualified for the position of fitting room associate, her reasonable accommodation claim would still fail because she has introduced no evidence of a fitting room associate vacancy. *See Moss*, 851 F.3d at 418 (5th Cir. 2017) (burden on plaintiff to identify vacancy).

[12] In reaching this conclusion, the Court summarily rejects Bluitt's unsupported and illogical argument that because she is 63 years old, her reassignment would, in effect, be temporary. *See* Doc. #58 at 14–15.

### C. Overnight Door Position

Bluitt argues it would have been reasonable to allow her to remain in the overnight door position because the physical aspects of the position were not essential and that, even if they were, the duties could have been reassigned to Moore. Doc. #58 at 14, 18.[13] Wal-Mart contends the overnight position was a temporary assignment and, even if it was not, the duties were essential and that reassignment of such duties is not a reasonable accommodation. Doc. #51 at 11. Because it is undisputed that the overnight door position was a temporary assignment (indeed, there was no job code), reassignment to this role could not have been a reasonable accommodation. *Toronka*, 411 F. App'x at 725. Accordingly, Bluitt's claim fails.

### D. Interactive Process

"[O]nce an employee has made a request for an accommodation, it may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability … in order to craft a reasonable accommodation." *Molden v. E. Baton Rouge Parish Sch. Bd.*, 715 F. App'x 310, 315–16 (5th Cir. 2017) (quotation marks omitted). "[A]n employer violates the ADA when the employer's unwillingness to engage in a good faith interactive process *leads to* a failure to reasonably accommodate an employee." *Id.* at 316 (quotation marks omitted). However, a failure to engage in the interactive process is only actionable if the plaintiff can show a failure to accommodate. *See Silva v. City of Hidalgo*, 575 F. App'x 419, 424 n.3 & accompanying text (5th Cir. 2014) (interactive process claim failed where plaintiff introduced no "evidence that there was an existing vacant desk duty or light duty position, or that … assessment that no such position was available was flawed."). Because, for the reasons above, the Court

---

[13] Bluitt refers to the position of door greeter in making these arguments. Doc. #58 at 14, 18. However, because the door greeter position involved no physical work, the Court presumes Bluitt is referring to the overnight door position she shared with Moore.

concludes Wal-Mart did not fail to reasonably accommodate Bluitt, there can be no liability from any failure to engage in an interactive process.

IV
**Conclusion**

Wal-Mart's motion for summary judgment [50] is **GRANTED**. A final judgment will issue separately.

**SO ORDERED**, this 19th day of July, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**